| UNITED STATES DISTRICT COURT | EASTERN DISTRICT OF TEXAS |
|---|---|

| UNITED STATES OF AMERICA | § | |
|---|---|---|
| | § | |
| *versus* | § | CRIMINAL ACTION NO. 4:14-CR-180 |
| | § | |
| ROBERT GILDNER (1) | § | |

**MEMORANDUM AND ORDER**

Pending before the court is Defendant Robert Gildner's ("Gildner") Motion Under 18 U.S.C. § 3582(c)(1)(A)(i) to Modify His Sentence (#360). United States Probation and Pretrial Services ("Probation") recommends denying the motion. Having considered the motion, Probation's recommendation, the record, and the applicable law, the court is of the opinion that the motion should be denied.

I.  Background

Gildner is currently serving a 240-month term of imprisonment, which was imposed after he pleaded guilty to Conspiracy to Possess with Intent to Distribute Methamphetamine, in violation of 21 U.S.C. § 846. Gildner is housed at the Federal Correctional Institution ("FCI") Texarkana in Texarkana, Texas.[1] In his Motion, Gildner identifies the COVID-19 Pandemic in conjunction with the fact that he "has a history of suffering from continuous bouts of tuberculosis and he also has a hiatal hernia on his esophagus" as the basis for seeking compassionate release.

II.  Analysis

On December 21, 2018, the President signed the First Step Act of 2018 into law. *See* First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194. The Act, in part, amended 18 U.S.C.

---

[1] As of July 14, 2020, the figures available at www.bop.gov lists 0 inmates and 0 staff members at FCI Texarkana as "Confirmed Active Cases" of COVID-19. The figures further indicate 0 inmate deaths, 0 staff deaths, 0 inmates recovered, and 1 staff recovered.

§ 3582(c), which gives the court discretion, in certain circumstances, to reduce a defendant's term of imprisonment:

> The court, upon motion of the Director of the Bureau of Prisons ("BOP"), or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that extraordinary and compelling reasons warrant such a reduction; or the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the [BOP] that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g); and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c)(1)(A). This provision is commonly referred to as "compassionate release."

Prior to the First Step Act, only the Director of the BOP could file a motion seeking compassionate release. *See Tuozzo v. Shartle*, No. 13-4897, 2014 WL 806450, at *2 (D.N.J. Feb. 27, 2014) (denying petitioner's motion for compassionate release because no motion for his release was filed by the BOP); *Slate v. United States*, No. 5:09-CV-00064, 2009 WL 1073640, at *3 (S.D.W.Va. Apr. 21, 2009) ("Absent a motion from the BOP, the Court lacks authority to grant compassionate release."). The First Step Act amended § 3582(c) by providing a defendant the means to appeal the BOP's decision not to file a motion for compassionate release on the defendant's behalf. *United States v. Cantu*, 423 F. Supp. 3d 345, 347 (S.D. Tex. 2019); *United States v. Bell*, No. 3:93-CR-302-M, 2019 WL 1531859, at *1 (N.D. Tex. Apr. 9, 2019). The plain language of the statute, however, makes it clear that the court may not grant a defendant's motion for compassionate release unless the defendant has complied with the administrative

exhaustion requirement. 18 U.S.C. § 3582(c)(1)(A); *United States v. Alam*, 960 F.3d 831, 833 (6th Cir. 2020) ("Even though [the] exhaustion requirement does not implicate [the court's] subject-matter jurisdiction, it remains a mandatory condition."); *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he exhaustion requirement . . . presents a glaring roadblock foreclosing compassionate release."). Thus, before seeking relief from the court, a defendant must first submit a request to the warden of his facility to move for compassionate release on his behalf and then either exhaust his administrative remedies or wait for the lapse of 30 days after the warden received the request. 18 U.S.C. § 3582(c)(1)(A); *Alam*, 960 F.3d at 833-34; *Raia*, 954 F.3d at 597.

Here, Gildner is foreclosed from obtaining relief because he has not submitted a request for compassionate release to the warden of the facility where he is housed. Gildner acknowledges that he has not exhausted his administrative remedies, and the court is without authority to waive the exhaustion of administrative remedies or the 30-day waiting period, as suggested by Gildner. *See Alam*, 960 F.3d at 832 ("[B]ecause this exhaustion requirement serves valuable purposes (there is no other way to ensure an orderly processing of applications for early release) and because it is mandatory (there is no exception for some compassionate-release requests over others), we must enforce it."); *United States v. Garcia*, No. CR 2:18-1337, 2020 WL 3000528, at *3 (S.D. Tex. June 2, 2020) ("While the Court sympathizes with Defendant's plight, because he has failed to comply with the exhaustion requirements under § 3582, his motion is not ripe for review, and the Court is without jurisdiction to grant it."); *United States v. Garcia-Mora*, No. CR 18-00290-01, 2020 WL 2404912, at *2 (W.D. La. May 12, 2020) ("Section 3582(c)(1)(A) does not provide [the court] with the equitable authority to excuse [the defendant's] failure to exhaust

his administrative remedies or to waive the 30-day waiting period."); *United States v. Collins*, No. CR 04-50170-04, 2020 WL 1929844, at *2 (W.D. La. Apr. 20, 2020); *see also Ross v. Blake*, ___ U.S. ___, 136 S. Ct. 1850, 1857 (2016) ("[J]udge-made exhaustion doctrines . . . remain amenable to judge-made exceptions," whereas "mandatory exhaustion statutes . . . establish mandatory exhaustion regimes, foreclosing judicial discretion."). Accordingly, at this time, the court does not have authority to grant the relief Gildner requests. Moreover, even if Gildner had complied with the exhaustion requirement before filing the instant motion, nothing in his motion indicates that extraordinary and compelling reasons exist to modify his term of imprisonment and release him from confinement.

Congress did not define "extraordinary and compelling." Rather, it elected to delegate its authority to the United States Sentencing Commission ("the Commission"). *See* 28 U.S.C. § 994(t) ("The Commission, in promulgating general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A) of title 18, shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples."); *see also* U.S. SENTENCING GUIDELINES MANUAL § 1B1.13 (U.S. SENTENCING COMM'N 2018) ("USSG"). In Application Note 1 to § 1B1.13 of the USSG, the Commission defined "extraordinary and compelling reasons" to include the following four categories of circumstances: (i) certain medical conditions of the defendant; (ii) the defendant is 65 years or older and meets other requirements; (iii) the defendant's family has specified needs for a caregiver; and (iv) other reasons in the defendant's case that establish an extraordinary and compelling reason. The court must also consider the factors set forth in 18

U.S.C. § 3553(a),[2] as applicable, and find that the sentence modification is consistent with the policy statements issued by the Commission. 18 U.S.C § 3582(c)(1)(A). The policy statement regarding compassionate release requires a determination that "the defendant is not a danger to the safety of any other person or to the community." U.S.S.G. § 1B1.13(2).

Gildner maintains that he is eligible for compassionate release due to his medical conditions and his desire to assist his diabetic mother around the house. According to Probation, he has served only 27.7% of his sentence and is ineligible for home confinement. The USSG provides that extraordinary and compelling reasons exist regarding a defendant's medical condition when the defendant is "suffering from a terminal illness (*i.e.*, a serious and advanced illness with an end of life trajectory)" or when a defendant is "suffering from a serious physical or medical condition," "suffering from a serious functional or cognitive impairment," or "experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13 cmt. n.1(A). Gildner, age 47, contends that he has a history of suffering from continuous bouts of tuberculosis and that he has a hiatal hernia on his esophagus. Gildner's assertion is not corroborated by any medical records. Moreover, the only physical ailment identified in his Presentence Investigation Report

---

[2] Section 3553(a) directs courts to consider: the nature and circumstances of the offense and the defendant's history and characteristics; the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; the need to deter criminal conduct; the need to protect the public; the need to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; the kinds of sentences and sentencing ranges established for defendants with similar characteristics under applicable USSG provisions and policy statements; any pertinent policy statement of the Commission in effect on the date of sentencing; the need to avoid unwarranted disparities among similar defendants; and the need to provide restitution to the victim. 18 U.S.C. § 3553(a).

("PSR") is sciatic nerve pain apparently stemming from a 2011 motorcycle accident for which he receives medication. The PSR also indicates that he needs dentures and has damaged nails on his right hand. According to Probation, Gildner currently works in UNICOR Recycling, does not have any medical restrictions, and is housed in the general population. According to BOP officials, Gildner is listed as a care level II in medical, meaning he is a stable outpatient who requires clinical evaluations once every 1 to 6 months, depending on the circumstances. Even if Gildner is in fact suffering from the conditions identified in his motion, neither of these medical conditions is terminal or substantially diminishes his ability to provide self-care. Hence, Gildner has failed to establish that a qualifying medical condition exists that would constitute extraordinary and compelling reasons to reduce his sentence.

Although the USSG acknowledges that extraordinary and compelling reasons may exist with respect to a defendant's family circumstances, it specifies the following qualifying conditions: (i) "[t]he death or incapacitation of the caregiver of the defendant's minor child or minor children" or (ii) "[t]he incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner." U.S.S.G. § 1B1.13 cmt. n.1(C)(i)-(ii). Here, Gildner's contention that his "mother is in need of her son to do many things around the house she cannot accomplish herself due to other complications" fails to meet the requirements for family circumstances that establish extraordinary and compelling reasons. Moreover, according to the PSR, Gildner has a daughter as well as three maternal half-siblings who are capable of assisting his mother.

Although Gildner expresses legitimate concerns regarding COVID-19, he does not establish that the BOP cannot manage the outbreak within his correctional facility or that the facility is

specifically unable to treat Gildner, if he were to contract the virus and develop COVID-19 symptoms, while incarcerated. *See Raia*, 954 F.3d at 597 ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread."); *United States v. Vasquez*, No. CR 2:18-1282-S-1, 2020 WL 3000709, at *3 (S.D. Tex. June 2, 2020) ("General concerns about the spread of COVID-19 or the mere fear of contracting an illness in prison are insufficient grounds to establish the extraordinary and compelling reasons necessary to reduce a sentence." (quoting *United States v. Koons*, No. 16-214-05, 2020 WL 1940570, at *5 (W.D. La. Apr. 21, 2020))); *United States v. Clark*, No. CR 17-85-SDD-RLB, 2020 WL 1557397, at *5 (M.D. La. Apr. 1, 2020) (finding the defendant had failed to present extraordinary and compelling reasons to modify his prison sentence because he "does not meet any of the criteria set forth by the statute" and he "cites no authority for the proposition that the fear of contracting a communicable disease warrants a sentence modification"). Gildner has failed to establish that a qualifying medical condition or other reasons exist that would constitute extraordinary and compelling reasons to reduce his sentence to home confinement.

In addition, compassionate release is not warranted in light of the nature and circumstances of Gildner's offense of conviction involving his serving as a manager/supervisor of a criminal organization that distributed 1.5 kilograms or more of methamphetamine (actual) and other factors. *See* 18 U.S.C. § 3582(c)(1)(A) (requiring courts to consider the § 3553(a) factors before granting compassionate release). Gildner supplied coconspirators across Collin County, Grayson County, and Fannin County, Texas, with distributable amounts of methamphetamine acquired from various

sources for several years. Gildner used his residence as a stash house and distribution point, employing couriers who lived on the property to deliver narcotics and collect drug proceeds. The execution of search warrants resulted in the seizure of methamphetamine and marijuana from his residence and other structures on the property. Gildner also has a significant criminal history, including prior convictions for driving while intoxicated, possession of marijuana, possession of a controlled substance (methamphetamine) (2), evading arrest with a vehicle, driving with a suspended license, and evading arrest. He failed to comply with previous terms of probation, received an other-than-honorable discharge from the Marine Corps, and has a history of daily substance abuse. Gildner contends that he will be confined in the home of his daughter if he is released—the daughter who resided on the same property and advised Probation that she was not aware that her father abused drugs until after his first arrest and was under the impression he no longer used drugs at the time of his offense of conviction, when he actually used at least 1 gram of methamphetamine daily. Therefore, the court cannot conclude that she could be relied upon to keep his activities in check and that he would not pose a danger to any other person or to the community, if released.

Moreover, the BOP has instituted a comprehensive management approach that includes screening, testing, appropriate treatment, prevention, education, and infection control measures in response to COVID-19. In response to a directive from the United States Attorney General in March 2020, the BOP immediately began reviewing all inmates who have COVID-19 risk factors, as described by the Centers for Disease Control and Prevention, for the purpose of determining which inmates are suitable for placement on home confinement. *See Collins*, 2020 WL 1929844, at *3. The BOP notes that inmates need not apply to be considered for home confinement, as this

is being done automatically by case management staff. To date, the BOP has placed 6,852 inmates on home confinement.

In his Memorandum to the BOP dated March 26, 2020, Attorney General Barr acknowledges that the Department of Justice ("DOJ") has an obligation to protect both BOP personnel and inmates. He also notes that the DOJ has the responsibility of protecting the public, meaning that "we cannot take any risk of transferring inmates to home confinement that will contribute to the spread of COVID-19 or put the public at risk in other ways." The Attorney General issued a subsequent Memorandum to the BOP on April 3, 2020, in which he emphasizes that police officers protecting the public face an increased risk from COVID-19 and cannot avoid exposure to the virus, with their numbers dwindling as officers who contract the virus become ill or die or need to recover or quarantine to avoid spreading the disease. Accordingly, he cautions:

> The last thing our massively over-burdened police forces need right now is the indiscriminate release of thousands of prisoners onto the streets without any verification that those prisoners will follow the laws when they are released, that they have a safe place to go where they will not be mingling with their old criminal associates, and that they will not return to their old ways as soon as they walk through the prison gates.

As the court noted in *United States v. Preston*, "[t]he best predictor of how [Defendant] will behave if he were to be released is how he behaved in the past, and his track record is a poor one." No. 3:18-CR-307-K, 2020 WL 1819888, at *4 (N.D. Tex. Apr. 11, 2020) (quoting *United States v. Martin*, No. PWG-19-140-13, 2020 WL 1274857, at *3 (D. Md. Mar. 17, 2020)). Here, Gildner's track record is similarly a poor one.

In short, Gildner has failed to satisfy his burden of showing the necessary circumstances to warrant relief under the statutory framework to which the court must adhere. *See Koons*, 2020 WL 1940570, at *4-5 (stressing that "the rampant spread of the coronavirus and the conditions

9

of confinement in jail, alone, are not sufficient grounds to justify a finding of extraordinary and compelling circumstances"). As the court observed in *Koons*, rejecting the notion that it has "carte blanche" authority to release whomever it chooses, "[t]he Court cannot release every prisoner at risk of contracting COVID-19 because the Court would then be obligated to release every prisoner." *Id*.

III.   Conclusion

Consistent with the foregoing analysis, Gildner's Motion Under 18 U.S.C. § 3582(c)(1)(A)(i) to Modify His Sentence (#360) is DENIED.

SIGNED at Beaumont, Texas, this 14th day of July, 2020.

                                                             _____
                                                             MARCIA A. CRONE
                                                             UNITED STATES DISTRICT JUDGE